[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
The defendant has filed a motion for summary judgment against the plaintiff's complaint. The complaint is not based on any statutory violation, no such statute is referenced; the complaint is based on a claim of what can be characterized as negligent nuisance.
The complaint states the City created the nuisance when it "defectively" extended a storm water drainage system beyond its original design (par. 4). The City did not take steps to correct this condition but "merely abandoned the storm pipe" which was a component of the drainage system (par. 5).
The City, according to the allegations of paragraph 6 of the complaint "failed to take steps to either remove the storm pipe or properly plug" it. A fair reading of the plaintiff's deposition, submitted along with the motion for summary judgment, is that water leaked from this pipe and caused damage to the plaintiff's property.
In the plaintiff's deposition testimony, he stated the problem developed when the plug originally put in the pipe eroded. After the plaintiff complained to city authorities, they examined the pipe which ran from a catch basis on a city street, removed the original plug and filled the pipe with concrete — after that the plaintiff's problems with the leakage from the pipe came to an end. CT Page 11634
It should further be noted that the plaintiff first noticed problems with water leaking into his home in January 1994 but he had bought his house approximately seven years previously. The deposition testimony of the plaintiff was relied upon by the defendant in advancing its motion for summary judgment. This seems appropriate since the plaintiff's deposition testimony, like any other relevant statement of a party, is an admission. Here, the plaintiff did not file an affidavit contradicting the deposition testimony relied on by the defendant nor did he point to any portion of the deposition testimony contradicting those portions of the deposition testimony the defendant sought to rely upon.
The complaint lies in nuisance; paragraph 3 alleges the City "created a nuisance," paragraphs 4, 10, 11 repeat the same language and paragraph 12 alleges the plaintiff incurred substantial costs "to repair the damage to his property resulting from the nuisance created by the defendant City of Shelton."
The defendant City moves for summary judgment on two grounds. It claims that as a matter of law there is no basis for a nuisance claim against the City. It further argues that the plaintiff's claim is barred by the statute of limitations.
The standards to be applied on motions for summary judgment are well known. If there is a genuine issue of material fact, the court cannot decide it but if the motion can be decided as a matter of law, the moving party is entitled to judgment.
 (A.)
As the defendant notes, to prevail on a nuisance claim, the plaintiff must show
 (1) the condition complained of had a natural tendency to create a danger and inflict injury upon person or property;
(2) the danger created was a continuing one;
 (3) the use of the land was unreasonable or unlawful;
(4) the existence of the nuisance was the CT Page 11635 proximate cause of the plaintiff's injuries or damages.
Elliott v. Waterbury, 245 Conn. 385, 420 (1998); State v.Tippetts, 204 Conn. 177, 183 (1987); Filisko v. BridgeportHydraulic Co., 176 Conn. 33, 35-36 (1978).
Since this is a suit against a municipality, the plaintiff must prove another element:
 (5) the condition constituting the nuisance must have been created by the positive act of the municipality.
Elliott v. Waterbury, supra at 245 Conn. p. 421.
The defendant assumes for the purposes of argument that due to an eroded plug the pipe abandoned by the City was the source of the water entering the plaintiff's property. The court will make the same assumption. The court will state the defendant's position as to each element of nuisance and discuss the arguments made.
 (1)
As to the first element, the defendant notes that the pipe was plugged at the time it was abandoned by the City and for many years leakage did not occur, thus it cannot be said that the condition had a natural tendency or was designed to create a danger or injury to person or property.
The plaintiff's claim appears to lie in negligent nuisance and can fairly be characterized as alleging that by failure to remove the pipe or properly plug it damage was eventually caused to his property. These negligence claims will have to be decided by the trier of fact and are not addressed as such in any of the materials or briefs submitted to the court. However, the court cannot accept the proposition that in order for a nuisance claim to be made the condition created had to have immediate deleterious consequences for the property of a complaining landowner. If a condition was created in such manner that injury was likely to occur at some point in the future, why shouldn't this element of nuisance be established, as long as it is found that an act which is determined to be negligent caused the ultimate injury at that future time? Thus, in Koystal v. Cass,163 Conn. 92 (1972), the plaintiff made a claim in nuisance. He CT Page 11636 discovered in the summer of 1967 that his well was contaminated by fuel oil. Some 17 years previously the defendant, at the direction of a town, had installed a fuel tank outside a hall and the tank was connected to the building by copper tubing. The leakage which caused pollution of the plaintiff's well occurred when the tubing broke thus permitting the fuel to spill from the tank onto the ground. Id. page 95.
In Stoto v. Waterbury, 119 Conn. 14 (1934). the court reversed the trial court's finding that nuisance had not been established. There the town maintained an open area which was covered by two iron doors that made passage along a passway safe. The chain holding the doors became worn and the doors were open; the poor plaintiff fell in and hurt himself. The court said in concluding nuisance had been established: "If the conditions necessary to create a nuisance were present, it might have arisen as well out of subsequent negligent omissions as out of the manner in which the situation was originally constructed." Id. page 17.
 (2)
As to the second condition — the danger created was a "continuing" one — this element cannot be met either according to the defendant. The plaintiff in his deposition said he bought his property in 1987 and there was no problem for years. When the plug in the pipe eroded water entered the plaintiff's property but according to his theory only when the water level in the catch basis reached a certain height. When the pipe was plugged with concrete there was no problem. Thus, there is no continuing condition; a condition which had continually been in existence from the date the pipe was abandoned and first plugged — the City did not create a nuisance when it "originally abandoned the pipe since a nuisance by definition must be a continuing condition from the date of its creation." Page 6 of brief.
Koystal v. Case, supra, seems not to require that any nuisance must be continuous from the date of its creation if that phrase is meant to be the date on which certain acts were performed, later determined to be negligent, which cause some injury in the future.
Also, the court cannot accept the defendant's argument that there was no continuing condition of danger to person or property because leakage occurred only when the water level in the catch basin reached a certain height. The court could not find a CT Page 11637 Connecticut case specifically articulating the general rule but that rule with supporting cases is noted in 58 Am.Jur.2d, § 96 at page 746, fn. 45-47.
 "The fact that an injury from an alleged nuisance is only occasional, or that the annoyance exists during part of the time only, does not prevent the act or thing causing it from being a nuisance, although such fact is to be considered with all the evidence in the case."
Several Connecticut cases suggest that this may be the rule in our state also. In Fern v. Pyramid Construction Co.,186 Conn. 682 (1982), the court find that the nuisance claim had been established. The plaintiff sought damages for the flooding of her land which she claimed resulted from the defendant's construction of apartment buildings on the adjoining property. As a result of its grading and filling, the defendant raised the level of its land and filled in marsh area which had in the past absorbed water. The court noted that: "As a result, the plaintiff's property was often flooded." (Emphasis added by this court). EnBurlburt v. McKane, 55 Conn. 31, 33 (1887), another nuisance case, the court found this claim proven in a case where the operation of a factory produced noise, smoke and cinders which made the plaintiff's neighboring house almost unlivable; the factory operated only a portion of the day. A similar result was reached in Marchitto v. West Haven, 150 Conn. 432, 434-436
(1963), where the defendant owned a dump and had his employees at certain times set fires over a 14 month period. The fire department had been called 22 times to put out fires. "Continuing" thus does not seem to mean and nuisance does not require constant danger to other property without interruption. The danger must at least be continuing in the sense that it recurs. In other words, nuisance is really a tort designed to protect against interference with the use and enjoyment of land. A recurring interference under certain circumstances, even though it is intermittent, can compromise one's ability to so use and enjoy property over a period of time As said in Connecticut Lawof Torts, 3d ed. Wright, Fitzgerald, Ankerman, § 128, page 369: "The essence of nuisance is that it is a continuing or recurring thing, which has a tendency to cause damage or inflict injury." Frankly, "nuisance" is an elusive concept and is almost better defined by what it is not. The concept of the danger it presents as being "continuing" is best understood from a single sentence in Koystol v. Cass, supra. Talking of the necessary elements to establish nuisance, the court said: "A further necessary element CT Page 11638 is that "the danger created must have been a continuing one," asopposed to a single act," 163 Conn. at page 100. (Emphasis added by this court). When more than a single act is alleged and proven and the interference is represented by recurrent acts then whether the condition is a nuisance, as such, is a question of fact for the jury.
 (3)
The City argues that the use they made of the land was not unreasonable or unlawful. All it did was to install storm drains which it had a right and obligation to do in order that the streets may be free from excess water. The City just "plugged a catch basis on a city street in order to abandon a pipe which ran underground into a private citizen's property." (Defendant's brief, p. 6)
But in 58 Am.Jur.2d § 76, page 729, the basics are emphasized: "The essential inquiry in any nuisance action is whether the conduct of the defendant was unreasonable, and there is no liability for nuisance unless the defendant's conduct was unreasonable under the circumstances." The court is not prepared to rule as a matter of law that the City acted in a reasonable manner by not removing the pipe or plugging it more securely or inspecting it after a certain time period. This is an action in negligent nuisance and this third element of such a claim is not conducive to treatment by way of summary judgment particularly when the matter is raised almost as if a motion to strike was before the court. Who is to say the City acted reasonably or unreasonably — the only attachment to the motion is the plaintiff's deposition transcript which, although perhaps an admission that the defendant could rely on it for its own purposes, does not address the reasonableness issue.
 (4)
The plaintiff must also establish that the nuisance was the proximate cause of the plaintiff's loss. The defendant argues that the plaintiff's own deposition testimony shows the loss was caused by "natural forces" — a plug in a drainage basin eroded over time and rain permitted the water level to rise to the point where the fact that there was an eroded plug allowed water to flow through a pipe flooding the plaintiff's property.
The court cannot accept this potion and again turns to the CT Page 11639 most general reference of all. In discussing nuisance and causation at 58 Am.Jur.2d § 85, it states:
 "In order to establish a nuisance some causal connection must exist between the defendants and the nuisance complained of, although the cause need not be direct. In order to render the defendant liable, it has variously been said that the acts done by him [sic] must have been the proximate and efficient cause of the creation of the nuisance complained of, a substantial factor in creating or continuing the alleged nuisance, the proximate cause of the damage resulting to the plaintiff's property, or that the maintenance of the nuisance must have been the natural and proximate cause of the injury."
The claim being made here, looking at the complaint and assuming as the defendant has that an eroded plug in a pipe abandoned by the City caused the flooding, is that the City was at fault in not removing the pipe altogether or in failing to "properly" plug the pipe. "Substantial" causative factors need not be exclusive ones and on the basis of the record submitted the court cannot decide that the City was not negligent and at fault in failing to remove or properly plug the pipe in question — under almost any record that could conceivably be presented such a determination would be a jury question in any event. Whether or not proximate cause has been shown "is ordinarily a question of fact," Delahunta v. Waterbury, 134 Conn. 630, 635
(1948).[1]
Furthermore, as to the issue of accidental or natural cause the same Am Jur article § 87, page 738 says the following:
 "A thing or condition which results wholly from accidental or natural causes, without the acts or agency of man, is not a nuisance in the legal sense, unless made so by statute. Thus, a landowner is not liable for damages resulting from a nuisance due solely to natural causes, and not to any act or negligence on his (sic) part." (Emphasis by court).
On the state of this record the court cannot say that any flooding here was due solely to natural causes — would the flooding have occurred if the pipe had been properly plugged? The deposition of the plaintiff attached to the defendant's motion CT Page 11640 indicates the flooding stopped after it was plugged with concrete.[2]
The Am Jur position sets forth general law which appears to be operative in out state. In Kloter v. Carabetta EnterorisesInc., 3 Conn. App. 103 (1985) the court upheld the award of damages and an injunction in a nuisance action where the plaintiff was able to show the culvert installed by the defendant collected surface and storm water and discharged the water on to the plaintiff's land, also see Berin v. Olson, 183 Conn. 337,338-342 (1981)
 (5)
As the defendant city notes because this is a suit against a municipality the plaintiff must prove another element to establish a nuisance claim. To overcome the governmental immunity of cities, a plaintiff must show that the city, by some positive act, intentionally created the conditions alleged to constitute a nuisance, Elliott v. Waterbury, 245 Conn. 385, 421 (1998), Wriqhtv. Brown, 167 Conn. 464, 470 (1975), Priffy v. Waterbury,133 Conn. 654, 657 (1947), Hoffman v. Bristol, 113 Conn. 386,390-392 (1931) Here the plaintiff's own testimony, according to the defendant, was that his loss was caused by a plug that eroded over time. The defendant goes on to argue that even the more general allegation that the city improperly abandoned a storm drainage pipe does not constitute a positive act. The city must take some positive act to create a dangerous condition.
This seems to be the general rule. In Municipal Corporations,
McQuillan, 3d Rev. ed at § 53.59.10, page 397 it says
 "A municipality will only be liable if the condition which constitutes the nuisance was created by some positive act of the municipality and the failure to remedy a condition not of the municipality's own making is not considered the equivalent of the required positive act." See Bradford v. State, 396 N.W.2d 522, 526
(Mich. 1986); Bible Baptist Church v. City of Cleburne, 848 S.W.2d 826, 829 (Ga., 1984).
See Lukas v. New Haven, 184 Conn. 205, 209 (1981); Brown v.Branford, 12 Conn. App. 106, 112 (1987) where the court says: "Our Supreme Court has drawn a distinction between the creation of a nuisance and the intentional maintenance of a CT Page 11641 nuisance . . ." The older case of Hoffman v. Bristol,113 Conn. 386 (1931) talked of the facts in the case before it and said a city would not be liable in nuisance where the danger was not a "condition created by the city, certainly not by acts which were wrongful in nature, or in intent actual or implied; the fault, if any, consisted in the failure to use the requisite care in remedying a condition otherwise created or occurring. Therein lies the distinction between nuisance to which governmental immunity does not attach, and mere negligence as to which it is available," id pages 391-392. But the distinction is apparently not simply between malfeasance as representing a "positive act" and nonfeasance. The court in Priffy v. Waterbury, 133 Conn. 654,657 (1947) commenting on Hoffman v. Bristol stated there "we said that where a municipal corporation creates and maintained a nuisance, it is liable in damages irrespective of whether themisfeasance or nonfeasance causing the nuisance also constituted negligence . . ." (emphasis by this court). In this regard, an interesting case is Columbus Ga. v. Smith, 316 S.E.2d 761 (Ga, 1984) where the court said that in a surface water invasion case, the continuing invasions amount to a continuing nuisance and if the city claims a right to use the drainage system then it is under a duty to maintain it so that the context and flow of the surface waters do not overflow to the damage of the adjacent property owners, id p. 766. In this case apparently it was held that the city had chosen to act by approving construction projects which gave rise to increased water runoff.
The record presented to the court on this motion is not adequate to decide the issue presented. The defendant indicates that the plaintiff investigated where the source of the water flowing into his home originated. He looked at maps of the "City's storm water drainage system", (page 1 of 3/24/99 brief). The pipe from which the flow proceeded was located in a catch basin that was part of the city's drainage system. The court cannot determine whether the drainage system as such was so constructed as to permit water to gather in that catch basin — if so failure to properly remove or plug pipes that could cause water to flow out of the catch basin area could certainly be a "positive act" under the cases as the court reads them.
 (B)
The defendant city also raises a statute of limitations claim. It argues that the three year statute of limitations (§52-577) applies because this action is founded upon a tort. The CT Page 11642 defendant argues that viewing the complaint in a light most favorable to the plaintiff, the complaint asserts one act or omission — the abandoning of the drainage pipe. That had to take place more than three years prior to the November 7, 1996 filing of this complaint because in his deposition the plaintiff testified he did not know when the pipe was abandoned but it preceded his arrival in the neighborhood in 1987.
The complaint here can be viewed in various ways. The complaint can be read as claiming that the "abandonment" of the pipe was based on the failure to remove the pipe or properly plug it. The failure to remove aspect of the abandonment had to have as its date some time before 1987 when the plaintiff bought this house. No flooding occurred until 1994 so that aspect of improper abandonment had to have occurred before 1987. That is, if the pipe had been removed there would have been no duty to plug it because there would have been no possibility of plugging a non-existent object. If the failure to remove the pipe is an absolute or nonnegligent nuisance, then the three year statute of limitations applies (§ 52-577) and it appears that this complaint was indisputably not brought within three years of the "act or omission complained of" — i.e., the failure to remove the pipe.
But alternatively, it could be argued that negligence is being asserted here and the failure to remove the pipe is not the real basis of the claim. Rather failure to plug the pipe with the appropriate material or knowing the material used had a predictable life span which required periodic inspection can be said to be the gravamen of the nuisance allegation. That would seem to define this case as lying in negligent nuisance. Quinnettv. Newman, 213 Conn. 343, 348-349 (1990) says that: "If the condition claimed to be a nuisance arises out of the creator's unintentional but negligent act, i.e. a failure to exercise due care, the resulting condition is characterized as a negligent nuisance." Most Superior Court cases that have considered the matter have concluded that a negligent nuisance is governed by §52-584 of the general statutes. That statute provides that an action falling under it "shall be brought . . . within two years from the date the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, except that no such action may be brought more than three years from the date of the act or omission complained of . . ."
Cases holding a negligence nuisance is governed by § 52-584
are Hansen v. Huntington Realty Inc., CV94 0539334 (Htfd., 1996); CT Page 11643Baker v. Fidelity Trust Co., 2 CSCR 730, 731 (1987), Bourgue v.Town of Enfield, CV91-03937 408 (Htfd., 1994), Szponan v.Stasiak, 8 CSCR 856 (1993), cf Turner v. City of New London, CV90-0515539 (1992), but see Campagna v. Weiss, 1 CSCR 699
(1986), cf Vittorio v. City of Bridgeport, et al, 9 CLR 477, 478
(1993).
If the court is correct in characterizing this as a negligent nuisance case, then the complaint was not filed within two years of the date the injury was first sustained or even discovered. At his deposition, the plaintiff said he first had problems in January of 1994. Suit was not brought until January 1996.
The difficulty the court has at this juncture is that neither party addressed any of the issues raised by the court on the statute of limitations question. The plaintiff assumes § 52-577
applies. The court believes as to a certain aspect of the claim § 52-584 applies. If § 52-577 does apply even to that aspect of the case related to the plugging of the pipe, from what date does the act or omission date? From the date the pipe was first plugged or from the date when the city knew or should have known plugs of this type would have in due course eroded? If the latter is true, then there may be no violation of the statute of limitations. But does that reasoning raise difficulties for the plaintiff, however, under Nardi v. Electronic SecurityEngineering Inc., 32 Conn. App. 205 (1993)
The difficulty is compounded by the fact that in his opposition to the defendant's motion, the plaintiff chose not to defend his nuisance claim against either the substantive deficiencies alleged or the statute of limitations attack but chose to characterize his action as one brought under § 13a-138
of the general statutes. That would solve all his problems since that statute provides for a fifteen year statute of limitations. The court agrees, however, with the defendant that that is not proper argument to oppose this motion. Section 13a-138 is not alluded to in the complaint, no amendment has been filed to the complaint. A party cannot expand his or her pleadings at the summary judgment stage, Collum v. Chain, 40 Conn. App. 449, 453
(1996), Shuster v. Buckley, 5 Conn. App. 473, 477 (1985). In any event, the court is not convinced that § 13a-138 even applies here. That statute provides that a town may provide for draining water off a highway through a person's property but it must be done in a reasonable way but, in any event, no water drainage shall be directed into the yard of or under a dwelling. The CT Page 11644 statutory remedy is necessary to avoid an unconstitutional taking. From what has been submitted the court cannot conclude that the town was using the drainage system here to drain off the water at the time damage was done to the plaintiff's property — the whole point seems to have been not to have water drain off from this catch basin, that is why the city plugged the pipe initially. There is a nuisance claim or nothing at all.
In any event, the court denies the motion insofar as it claims that as a matter of law a nuisance claim has not been set forth. On the statute of limitations claim the court believes it does not have an appropriate factual record or at least sufficient briefing to decide what appears to be a rather complicated issue. If the plaintiff wishes to pursue this aspect of his motion and the defendant to oppose the statute of limitations claim further affidavits, documents or depositions should be submitted and/or further briefs on the subject. Since the end of the term is approaching, I cannot decide the issues presented by the limitations question. My assignment will be some distance away, the court has no objection to another judge hearing this aspect of the motion if it is renewed but will leave a decision on this procedural question to the presiding civil judge.
Corradino, J.